GMK:NJ:cer

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TIMOTHY L. DOUGLAS,** | : | NO. 4:22-CV-0862 |
| Petitioner | : | |
| | : | |
| v. | : | (Arbuckle, M.J.) |
| | : | (Mariani, J.) |
| **STEPHEN SPAULDING,** | : | |
| Respondent | : | **Electronically Filed** |

## RESPONSE TO THE AMENDED PETITION
## FOR WRIT OF HABEAS CORPUS

Timothy L. Douglas, an inmate at the United States Penitentiary Lewisburg (USP Lewisburg), seeks restoration of a 499-day sentence credit he received pursuant to *Willis v. United States,* 438 F.2d 923 (5th Cir. 1971) for time spent in state prison before the commencement of his federal sentence. Because that federal sentence was not ordered to run concurrently with his state sentence, however, he was never eligible for the *Willis* credit and so it was properly rescinded. Moreover, his equitable claims are belied by the actual timeline of events (only six weeks spent expecting a 2022 release date one year away before it was corrected to 2023) as well as the input of his sentencing judge (against his sentence

being shortened). Accordingly, his petition should be denied.

## I. Factual Background

A review of Douglas's Pre-sentence Investigation Report (PSI) reveals that the conduct forming the basis of his current federal offense took place in March 2001. Ex. 1, Hayes Decl., ¶ 5.[1]

He was arrested on state charges two months later, however, for four offenses:

(1) Case Number 237911 (aggravated assault, 2 counts),

(2) Case Number 237565 (aggravated assault, 2 counts),

(3) Case Number 237685 (aggravated kidnapping), and

(4) Case Number 234704 (possession of cocaine, driving on a revoked license, and escape).

Ex. 1 ¶ 6.

In August 2001, the United States Marshals Service (USMS) took Douglas into temporary federal custody pursuant to a writ of habeas corpus ad prosequendum for Case No. 1:01-cr-00146 in the United States

---

[1] Information contained in Respondent's Exhibit 1 was obtained through a review of Douglas's PSI. However, since federal inmates are not permitted to possess copies of their PSIs and Respondent was unable to obtain permission from the sentencing court to use Douglas's PSI in this action, it is not included among Respondent's exhibits.

District Court for the Eastern District of Tennessee. Ex. 1 ¶ 7; Attach. B, USMS-129 Data; Attach. B, Judgment. The federal court sentenced him to a 224-month term of imprisonment about a year later (140 months for armed bank robbery and 84 consecutive months for brandishing a firearm during a crime of violence).² Ex. 1 ¶ 8; Attach. C, Federal Judgment. The USMS returned Douglas to Tennessee state authorities shortly thereafter and lodged the federal judgment in Case No. 1:01-cr-00146 as a detainer. Ex. 1 ¶ 9, Attach. B.

In November 2003, the Tennessee state court sentenced Douglas to the following:

(1) Eleven months and twenty-nine days in case numbers 237911 and 237565 for aggravated assault (to be served concurrent to his yet-to-be imposed federal sentence with pre-trial credit from May 9, 2001 through November 20, 2003);

(2) Eight years in case number 237685 for aggravated kidnapping (to be served concurrent to his federal sentence with pre-trial credit from May 9, 2001 through November 20, 2003, and consecutive to his sentence for the escape offense in Case Number 234704); and

---

² Douglas's 84-month conviction on 18 U.S.C. § 924(c) is statutorily prohibited from running concurrent to any other sentence pursuant to U.S.S.G. § 2K2.4. *Id.* ¶ 17.

(3) The original term of eight years for probation revocation in case number 234704 plus one year for the offense of escape (consecutive to the eight-year original term with jail credits from October 5, 2000 through October 7, 2000; October 23, 2000 through November 12, 2000; and from May 9, 2001 to November 21, 2003).

Ex. 1 ¶ 10; Attach. D, Tennessee State Judgments.

More than a decade later, the Tennessee Department of Corrections paroled Douglas and released him to the exclusive custody of the USMS. Ex. 1 ¶ 11; Attach. E, State of Tennessee Board of Parole. Thus, the BOP calculated Douglas's sentence as commencing on August 12, 2014, the date he came into custody of federal authorities. Ex. 1 ¶ 12; Attach. F, Sentence Monitoring Computation Data. His original computation shows that Douglas received a 499-day *Willis* credit, yielding a projected release date of February 25, 2029. *Id*. As the documentation Douglas attaches to his petition indicates, that was still his projected release date as of July 6, 2021. (Doc. 28-11 at 4.)

About seven years later, the Eastern District of Tennessee amended Douglas's federal sentence in Case No. 1:01-cr-00146 to an aggregate 130-month term of imprisonment (46 months on count one consecutive to 84 months on count two). Ex. 1 ¶ 13; Attach. G, Am. J. Upon the issuance of an amended federal judgment, the BOP updated Douglas's federal

4

sentence and, discovering that the *Willis* credit had been applied in error, both removed the erroneous credit and accounted for his reduced sentence. Ex. 1 ¶ 14; Attach. A. Douglas's release date is now December 29, 2023. *Id.* Again, the documentation Douglas attaches to his petition shows that as of August 28, 2021—just six weeks after his resentencing and less than two months after a computation showing a 2029 release date—he had a projected release date of November 5, 2023. (Doc. 28-12 at 4.)

## II. Procedural History

Douglas filed his initial habeas corpus petition on May 31, 2022, supported by a memorandum of law. (Docs. 1, 3.) Because the awarding of *Willis* credits is not a discretionary act but effecting a *nunc pro tunc* designation is, the BOP interpreted Douglas's request as seeking the latter. Ex. 1 ¶ 15. As part of this process, the BOP submitted a letter to Douglas's sentencing judge on June 15 requesting his input as to whether Douglas's federal sentence is to run concurrently with his state term. Ex. 1 ¶ 15, Attach. H, DSCC Correspondence.

The government responded to the petition on June 30. (Docs. 13-14.) The Court then scheduled a telephone conference for July 22 to

discuss the procedural posture of the case. (Doc. 17.) At that conference, the government urged the Court to hold off on making a decision because both a response from Judge Collier to the BOP's letter and the resultant BOP decision on retroactive designation were still pending. The Court agreed, scheduled a follow-up conference for August 25, and asked the BOP to consider and respond to Douglas's administrative remedy request regarding his *Willis* credit in the interim. (Doc. 19.)

Because the sentencing court did not respond within 60 days, the BOP completed the five-factor review under 18 U.S.C. § 3621(b) and denied the *nunc pro tunc* designation on August 15. Ex. 1 ¶ 15. A week later, the BOP issued a letter explaining that Douglas was also not entitled to a *Willis* credit because his federal sentence was not ordered to run concurrently with his state sentence. (Doc. 28-16.)

At the August 25 conference, the Court granted Douglas leave to file an amended petition in light of the BOP's response to his *Willis* claim, reminding his counsel that this new document would entirely replace his former pleading and so should contain all arguments he wished to be considered. (Doc. 24.) Douglas filed this amended petition and supporting memorandum of law on September 2. (Docs. 27-28.)

6

On September 16, BOP counsel learned and informed counsel for the government that the sentencing court had submitted a tardy reply to the original BOP letter. Judge Collier indicated therein that he did not believe retroactive designation was appropriate for Douglas. Ex. 1 ¶ 16; Attach. I, Collier Correspondence. Accordingly, the BOP reissued its *nunc pro tunc* designation determination to reflect the sentencing judge's imput, ultimately supporting its initial decision to deny retroactive designation. *Id.*

### III. Questions Presented

A. Whether the Court should deny the habeas corpus petition because Douglas was never entitled to a *Willis* credit?

B. Whether the Court should also deny the habeas corpus petition because Douglas never meaningfully relied on the credit and the sentencing court believes he should serve his current full sentence without it?

### IV. Argument

**Douglas's *Willis* credit was correctly rescinded.**

The awarding of *Willis* credits is a non-discretionary process in which inmates whose sentences meet two prerequisites are automatically given what amounts to double credit for their time spent in state custody. See *Smith v. McKean,* 580 F. App'x 98, 101 (3d Cir. 2014). Douglas's

sentence fails one of those requirements, so his original receipt of the credit was in error. What is more, his equitable argument that he should receive the credit notwithstanding this ineligibility is belied by the short span of time during which it meaningfully factored into his release date (less than two months) and the opposition of his sentencing court to his receiving a double credit via any other means.

> **A. Douglas was never entitled to a *Willis* credit because his federal sentence was not ordered to run concurrently with his state sentence.**
>
> **1. BOP sentence calculations start with the date the defendant is received in custody and then incorporate any applicable credits.**

The Attorney General, through the BOP, is responsible for computing federal sentences. *See* 18 U.S.C. § 3585; 28 C.F.R. §0.96; *United States v. Wilson*, 503 U.S. 329, 331-32 (1992). Computation of a federal sentence is governed by 18 U.S.C. § 3585 and consists of a two-step process: (1) a determination of the date on which the federal sentence commences, and (2) consideration of any credit to which petitioner may be entitled. *Chambers v. Holland*, 920 F. Supp. 618, 621 (M.D. Pa. 1996), *aff'd*, 100 F.3d 946 (3d Cir. 1996).

"A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). A federal sentence does not begin to run when a federal defendant is produced from state custody pursuant to a federal writ of habeas corpus ad prosequendum because, in such a situation, the state authorities retain primary custody over the prisoner. *Holloman v. Warden Fairton FCI*, 635 F. App'x 12, 14 (3d Cir. 2015); *see also Chambers*, 920 F. Supp. at 622; *Blue v. Longley*, No. 12-cv-089, 2013 WL 1194945, *2 (W.D. Pa. Feb. 20, 2013) (citing *Ruggiano v. Reish*, 307 F.3d 121 (3rd Cir. 2002); *Barden v. Keohane*, 921 F.2d 476 (3rd Cir. 1990).

The next step is to determine the amount of credit, if any, for time spent in custody prior to the commencement of a federal sentence. A defendant is entitled to credit for time served prior to the date the sentence commences: "(1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; *that has not been credited against another*

9

*sentence.*" 18 U.S.C. § 3585(b) (emphasis added). Likewise, BOP Program Statement 5880.28 precludes credit for time that had been credited against another sentence. *See* Program Statement 5880.28, *Sentence Computation Manual*, https://www.bop.gov/policy/progstat/5880_028.pdf, p. 1-14 (last accessed June 29, 2022).

### 2. Review under *Willis* for credit is non-discretionary and Douglas's federal sentence is ineligible.

Pursuant to *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971), inmates with concurrent federal and state sentences can receive credit for non-federal presentence custody that begins on or after the date of the federal offense, up to the date the federal sentence commences. *See also*, Program Statement 5880.28, *Sentence Computation Manual*, https://www.bop.gov/policy/progstat/5880_028.pdf, p. 1-22 (last accessed June 29, 2022). Essentially, *Willis* credit applies only if (1) the state and federal sentences are concurrent; and (2) the state effective full term (EFT) is shorter than the federal EFT. *Cabot v. Mariorana*, No. 15-0900, 2015 WL 4160075, at *4 (M.D. Pa July 9, 2015). This requires "as a prerequisite that the state and federal sentence in question be concurrent." *Castro v. Sniezek*, 437 F. App'x 70, 73 (3d Cir. 2011).

It is undisputed that Judge Collier did not order—at either the time of Douglas's original sentencing in 2001 or his resentencing in 2021— that Douglas's federal sentence should run concurrently with his state sentence. This single fact is determinative of the *Willis* issue and fully explains why the BOP later rescinded the credit. (Doc. 28-16, at 3) (pointing out that "the federal sentence was not ordered to run concurrently with Mr. Douglas's state sentence"); *see also Barden v. Keohane,* 921 F.2d 476, 478 n. 4 (3d Cir. 1991) (citing U.S. Const. Art. VI, cl., 2) (recognizing that "neither the federal courts nor the BOP are bound in any way by a state court's direction that the state and federal sentences run concurrently"). As Douglas accurately notes at one point in his petition, *Willis* credits are an "entitlement," (Doc 27, at 6): if the federal sentencing court says the sentences are concurrent, you get it; if it doesn't, you don't. *See Taccetta v. Fed. Bureau of Prisons,* 606 F. App'x 661, 664 (3d Cir. 2015) (emphasis added) ("The *Willis* **rule** applies only if: (1) the state and federal sentences are concurrent; and (2) the state EFT is equal to or shorter than the federal EFT."). That is why Douglas's later insinuation that the BOP has discretion in this process is made without legal citation, (Doc. 27, at 21 n. 6), and why he can support his

assertion that it was a "deliberate . . . finding" with only "[c]ircumstantial evidence." (Doc. 27, at 21.) Though he seeks to assign nefarious motives to the BOP's number-crunchers in Texas, the far more plausible and mundane explanation is that they awarded the *Willis* credit initially based on a mistaken understanding of the federal sentencing court's intention, discovered this error during an audit that was triggered by his resentencing, and then simply corrected it.

### 3. Review under *Barden* for retroactive designation is discretionary and is a distinct process.

It is precisely because *Willis* review is so restrictive—and **not** because the two are interchangeable—that the BOP interpreted Douglas's request as seeking retroactive designation of his state facility. Unlike *Willis* review, this latter so-called *Barden* review gives the BOP discretion in making its determination. *See Barden,* 921 F.2d at 481 (finding that BOP can "exercise[e] . . . statutory discretion"); *Smith v. McKean,* 580 F. App'x 98, 101 n. 5 (3d Cir. 2014) (observing that "the BOP has the discretion to decide whether the state prison housing an individual may be designated as a federal prison *nunc pro tunc* for purposes of satisfying his federal sentence"); *Allen v. Nash,* 236 F. App'x 779, 782 (3d Cir. 2007) (holding that BOP decision regarding retroactive

12

designation can be reviewed to determine if it "exercised its discretion in a constitutionally impermissible way"). Although the two approaches can end up achieving essentially the same result, they are nevertheless distinct processes subject to different criteria: application of *Willis* provides a credit to a federal sentence based on time spent in state custody; application of *Barden* deems a state institution to be federal for purposes of calculating time spent in federal custody; application of *Willis* is automatic if two criteria are met; application of *Barden* is discretionary and involves consideration of five factors. The BOP made its initial *Willis* determination as to Douglas in 2014, corrected it in 2021, and explained it via the August 22, 2022 letter requested by this Court (Doc. 28-16). It commenced its *Barden* review, in contrast, only upon Douglas's filing of his initial habeas petition in May of this year, made its initial determination in mid-August, and then redid it after receiving Judge Collier's input. Douglas misleadingly conflates the two when he states that "the Bureau's 2014 grant of credits was not a mistake, but a reasoned decision based on a completely discretionary *nunc pro tunc* determination," (Doc. 28, at 11), and when he uses only cases analyzing *Barden* review to support his right to a *Willis* credit. *See, e.g.,* (Doc. 28,

at 22) (citing *Allen* for proposition that "the Bureau had the undisputed authority in 2014 to designate Mr. Douglas's sentence on Count I as concurrent with his state sentences and to find him eligible for *Willis* credits").

In short, Douglas's petition concerns solely whether he is entitled to a *Willis* credit.[3] His sentence never qualified, so he is not and the BOP was right to rescind it.

### B. Equitable considerations militate against restoring the erroneously-applied *Willis* credit to Douglas.

As Douglas acknowledges "[t]he mere existence of a mistake by the Bureau—even a longstanding one—will rarely bar correction." (Doc. 28, at 12.) Yet he insists that his is one of those "certain unique cases," *id.*, where the Due Process Clause prohibits the BOP from doing so because the mistake "engendered substantial reliance interests, particularly with a federal sentencing court." (Doc 27, at 17.) It is not.

---

[3] In other words, the BOP's *Barden* decision is **not** at issue in this case. S*ee* (Doc. 28, at 9 n. 4) ("Mr. Douglas styled his informal complaint, formal complaint, and administrative appeals as requests for the restoration of his *Willis* credits."). Even if it were, given his disciplinary history and Judge Collier's opposition, Douglas would be hard-pressed to show the BOP abused its discretion in denying him.

14

### 1. Douglas did not meaningfully rely on the credit.

Douglas's original release date, provided to him in 2014 and factoring in the *Willis* credit, was in early 2029. Ex. 1 ¶ 12; Attach. F. The credit at issue comprises about a year and four months, so without it his release would have been sometime in late 2030. Nothing changed significantly until his resentencing in 2021. Hence the first stage of Douglas's "reliance" on the error consists of 7 years spent believing his release was between 15 to 8 years away instead of 16-and-a-half to 9-and-a-half years away. When his sentence was reduced in mid-2021, his release (again with *Willis* intact) was still a year away. And, as he acknowledges, he spent only "[a]pproximately one month" with this date in mind before the BOP corrected the *Willis* error, (Doc. 27 at 10), pushing his release to the end of 2023. Ex. 1 ¶ 14; Attach. A. In short, Douglas's reliance on the BOP's error was either not meaningful or short-lived and, in all events, garden-variety. If his situation merits undoing the BOP's correction, then surely all situations do. But this is neither what the law dictates nor permits.

### 2. The federal sentencing court is against providing Douglas double credit for his time spent in state custody.[4]

Judge Collier was asked to offer his views in the context of Douglas's *Barden* review which, as discussed in Section A.3 *supra,* is distinct from *Willis* review. But the BOP thoroughly explained in its letter the consequences of the judge's input: satisfaction of Douglas's sentence and immediate release if his sentences were effectively made concurrent via retroactive designation; release in December 2023 if not. Accordingly, the judge's disinclination to permit retroactive designation makes clear that the BOP's rescinding of the *Willis* credit and concomitant revised calculation—contrary to Douglas's contentions—neither "undermine[d] [the] sentencing court's choice of punishment" nor otherwise altered Douglas's sentence in a way Judge Collier finds unacceptable. (Doc 27, at 15.) To be sure, "Mr. Douglas's counsel and counsel for the Government both relied on [the BOP's original]

---

[4] Douglas had not been apprised of Judge Collier's response when he submitted his amended petition. Even though it was received by the BOP's computation center a few days prior to his submission, neither BOP counsel nor counsel for the government were made aware of it until several weeks later.

computation when crafting their recommended sentences." (Doc 27, at 12.) But this is not because they were wedded to the specific dates at issue; rather, they merely assumed the BOP's calculation provided the correct baseline and were considering only how it should be modified as a result of Douglas's motion. A different baseline would have resulted in a different recommendation, at least on the government's part. In any event, Douglas can no longer invoke the conjectured expectations of the sentencing court to justify upending the BOP's determination now that Judge Collier has opined against releasing him any earlier.

## V. Conclusion

The Court should deny the habeas corpus petition because the BOP's rescinding of Douglas's *Willis* credit was proper. He was never entitled to it in the first place and it never "induced substantial and irreparable reliance interests." (Doc. 28 at 11.)

Respectfully submitted,

GERARD M. KARAM
United States Attorney

s/ Navin Jani
Navin Jani
Assistant U.S. Attorney
CA 298118
Cynthia E. Roman
Supv. Paralegal Specialist
316 Federal Building
240 West Third Street
Williamsport, PA 17701
Telephone: (717) 221-4482
Navin.Jani@usdoj.gov

Date: September 30, 2022

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| TIMOTHY L. DOUGLAS, | : | NO. 4:22-CV-0862 |
| Petitioner | : | |
| | : | |
| v. | : | (Arbuckle, M.J.) |
| | : | |
| STEPHEN SPAULDING, | : | |
| Respondent | : | Electronically Filed |

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers. That on September 30, 2022, she served the following

## RESPONSE TO THE AMENDED PETITION FOR WRIT OF HABEAS CORPUS

via the Court's Electronic Case Filing (ECF) system to Petitioner's counsel of record.

### Addressee:

Alexander Biays Bowerman
alexander.bowerman@hoganlovells.com

Dana A. Raphael
dana.raphael@hoganlovells.com

Johannah Walker
johannah.walker@hoganlovells.com

 

s/ Cathy J. Holler
Cathy J. Holler, Contractor
Paralegal/Legal Assistant II